THOMPSON, J.
 

 This is a suit for the wrongful use and conversion of gas at the rate of 1,000,000 cubic feet per day from about January 7, 1921, to the month of October, 1922, with an interruption of several days during April, 1922.
 

 The value of the gas is fixed at 20 cents for 1,000 cubic feet.
 

 A further damage is claimed for this: That during the period of defendant’s wrongful appropriation and conversion of the gas he used the wells of plaintiff in an improvident manner and with a reckless disregard of petitioner’s rights, and in disregard of all of the usages and regulations covering the use of natural wells, and by reason thereof one of petitioner’s wells was completely exhausted or killed and the other was greatly impaired, and its productivity reduced more than one-half.
 

 The amount claimed for the destruction of the one well is $10,000, and for injury to the other well $5,000.
 

 The defendant filed an exception of no cause of action, pleaded the prescription of one year in bar of plaintiff’s action, denied that the plaintiff was a partnership in law, and denied that he was indebted to the plaintiff in any sum whatever.
 

 The case was tried on the merits and resulted in a judgment rejecting the plaintiff’s demand.
 

 
 *316
 
 The plaintiff was the owner of two producing gas wells located on land covered by what was known as the Ghapfraix-Lane lease. The production from the two wells was utilized and distributed to consumers through a pipe line owned by Belchic & Laskey, under an arrangement by which the owners of the pipe line were to pay the plaintiff one-half of the net proceeds of the gas.
 

 In the month of December, 1920, Belchic & Laskey sold the pipe line to the defendant Dyer. In this contract it was agreed that Dyer should have the privilege of disconnecting the pipe line from the plaintiff’s gas wells, without any obligations to the said Bayou Pierre Petroleum Company. Dyer, however, continued to pipe gas from the plaintiff’s wells until some time in January, 1921, when he claims that he disconnected his pipe line from the plaintiff’s wells.
 

 On the 17th of January, 1921, Dyer entered into a contract with W. G. Strange Oil
 
 &
 
 Refining Company, by which he was to take gas from a well of said company, to be transported and distributed through his pipe line to his patrons and consumers. Accordingly an extension of his pipe line was made by Dyer to a connection with the Strange well. There is a dispute as to when this connection was made, and a controversy arose between the manager of the plaintiff and Dyer as to the amount of gas taken from plaintiff’s wells prior to the severance of the pipe connection. The matter was compromised by Dyer paying plaintiff the sum of $210.
 

 We think it is shown by a fair preponderance of the evidence that Dyer ceased to use the gas from plaintiff’s wells — that is to say, that he disconnected his pipe line — around the middle of January, 1921.
 

 There is no evidence to show that the wells were connected up with Dyer’s line from the time the disconnection was made in January, 1921, until some time in June of that year.
 

 Mr. Wright, plaintiff’s manager, visited the-wells in June, 1921, and found them connected up with defendant’s line. He says that he-attempted to test the valves to see if they were opened into Dyer’s line, but was unable to do so, because he was not familiar with such matters. He says that he informed Fisher, who was employed by him and also by Dyer, that he suspected that his gas was being used or piped by Dyer. Wright was assured by Fisher that no gas was going into-the pipe lines from plaintiff’s wells.
 

 Another visit was made by Wright to the-wells in April, 1922, when he found the pipes again connected up with plaintiff’s wells. The disconnection was again made, and the valves closed. It was on this occasion that Wright told Fisher to stay off of the line.
 

 No further visits were made to the wells until October, 1922, when Wright, in company with two other persons, found that the pipe line was connected with one of the wells and that the other one was dead. An inspection of the fields, it is claimed, showed all other wells using Dyer’s gas were shut down.
 

 There is some evidence going to show that Meyers (Miles), general office man or manager for Dyer, admitted to Wright that Fisher had called up the Shreveport office, and said that the Bayou Pierre wells were cut off and that he needed gas.
 

 There is also some evidence going to show the amount of gas which Dyer sold and distributed during the period for which claim is made in this suit. But beyond this, and the fact that the wells were hooked up with Dyer's pipe line on three widely separated occasions, there is no evidence to establish with that degree of certainty required by law, that Dyer himself or any one acting for him had been guilty of purloining the gas from plaintiff’s wells.
 

 No greater probative effect can be given the plaintiff’s evidence as a whole than that it
 
 *318
 
 creates a suspicion that some gas at different times went into the defendant’s pipe line.
 

 It is quite clear, however, from the evidence, that, if such was a fact, the defendant had nothing to do with it, never consented to it, and had no knowledge of it.
 

 This, however, could be true, and still the ■ defendant would be liable, if it was shown that the gas from the plaintiff’s wells was distributed through defendant’s pipe to his customers and he received the value of it.
 

 But, as we have said, that is not established, and the only two witnesses who were in position to know the facts, and who were on the ground practically during the whole period for which it is claimed that gas was taken from the wells, by their testimony remove any suspicion which might otherwise attach to Dyer from the pipe connection with the wells on the three occasions mentioned.
 

 We have considered the record in this case very carefully, and are not convinced that liability has been fixed upon the defendant. We are certainly not in a position to say that the conclusion of the trial judge is manifestly wrong.
 

 This conclusion renders it unnecessary to consider the exceptions filed by the defendant.
 

 Judgment affirmed.